**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

**ELIZABETH PANZARELLA** and
**JOSHUA PANZARELLA, individually and**
on behalf of all others similarly situated,

        **Plaintiffs,**

    **v.**

**NAVIENT SOLUTIONS, LLC,**

        **Defendant.**

**No. 2:18-cv-03735-PBT**

**CLASS ACTION**

**MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

FRANCIS MAILMAN SOUMILAS, P.C.
James A. Francis
David A. Searles
1600 Market Street, Suite 2510
Philadelphia, PA 19103

ROBERT P. COCCO, P.C.
Robert P. Cocco, Esquire
1500 Walnut Street, Suite 900
Philadelphia, PA 19102
(215) 351-0200

MANEY & GORDON, P.A.
David P. Mitchell, Esq.
Florida Bar No. 067249
101 East Kennedy Blvd., Suite 3170
Tampa, Florida 33602
Telephone: (813) 221-1366
Fax: (813) 223-5920
David@MitchellConsumerLaw.com

Attorneys for Plaintiffs and the Classes

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ........................................................................................ ii

I.    INTRODUCTION ..................................................................................... 1

II.    PROCEDURAL BACKGROUND............................................................ 3

III.    FACTS ..................................................................................................... 4

    A.    The Telephone Consumer Protection Act................................. 4

    B.    The Experience of Plaintiffs Panzarella................................. 5

    C.    Navient's Common Auto Dialing Practice ............................. 7

IV.    ARGUMENT ........................................................................................... 11

    A.    Legal Standards Governing Class Certification...................... 11

        1.    The Requirements of FED. R. CIV. P. 23(a)................... 13

            a.    Numerosity................................................... 14

            b.    Commonality................................................. 15

            c.    Typicality .................................................... 17

            d.    Adequate Representation .............................. 18

        2.    The Requirements of FED. R. CIV. P. 23(b) .................. 19

    B.    Appointment and Approval of Class Counsel Is Warranted................. 22

    C.    Plaintiffs' Trial Plan.............................................................. 22

V.    CONCLUSION........................................................................................ 24

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*American Copper & Brass, Inc. v. Lake City Indus. Products, Inc.*,
  757 F.3d 540 (6th Cir. 2014) ................................................................3

*Baker v. Navient Solutions, LLC*,
  C.A. No. 17-1160 (ECF 92) (E.D. Va. Feb. 8, 2019) ...........................8

*Montgomery Cty., Pa. ex rel. Becker v. MERSCORP, Inc.*,
  298 F.R.D. 202 (E.D. Pa. 2014)......................................................12, 17

*Boyle v. Progressive Specialty Ins. Co.*,
  326 F.R.D. 69 (E.D. Pa. 2018).............................................................15

*Cavin v. Home Loan Ctr., Inc.*,
  236 F.R.D. 387 (N.D. Ill. 2006)...........................................................20

*Chakejian v. Equifax Info. Servs., LLC*,
  256 F.R.D. 492 (E.D. Pa. 2009)...........................................................20

*City Select Auto Sales Inc. v. BMW Bank of N. Am. Inc.*,
  867 F.3d 434 (3d Cir. 2017)...........................................................14, 15

*City Select Auto Sales, Inc. v. David Randall Associates, Inc.*,
  296 F.R.D. 299 (D.N.J. 2013)...............................................................16

*City Select Auto Sales, Inc. v. David Randall Associates, Inc.*,
  885 F.3d 154 (3d Cir. 2018)...................................................................5

*In re Data Access Sys. Sec. Litig.*,
  103 F.R.D. 130 (D.N.J. 1984)...............................................................17

*General Tel. Co. of Southwest v. Falcon*,
  457 U.S. 147 (1982)..............................................................................17

*Gillespie v. Equifax Info. Servs., LLC*,
  2008 WL 4614327 (N.D. Ill. Oct. 15, 2008).........................................20

*Good v. Nationwide Credit, Inc.*,
  314 F.R.D. 141 (E.D. Pa. 2016)............................................................16

*Gulf Oil Co. v. Barnard*,
  452 U.S. 89 (1981)..........................................................................11, 13

*Harlan v. Transworld Sys., Inc.*,
　302 F.R.D. 319 (E.D. Pa. 2014) .................................................................15

*Hawk Valley, Inc. v. Taylor*,
　301 F.R.D. 169 ..............................................................................................3

*In re Hydrogen Peroxide Antitrust Litigation*,
　552 F.3d 305 (3d Cir. 2008) .......................................................................12

*Johnson v. Comodo Group, Inc.*,
　2020 WL 525898 (D.N.J. 2020) ...................................................................3

*Johnson v Navient Solutions, Inc.*,
　Case No. 1:15-cv-0716 (ECF 177) (S.D. Ind. July 13, 2017) ...............2, 7

*Johnston v. HBO Film Management, Inc.*,
　265 F.3d 178 (3d Cir. 2001) ..................................................................12, 16

*Jordan v. Commonwealth Fin. Sys., Inc.*,
　237 F.R.D. 132 (E.D. Pa. 2006) .................................................................16

*In re Kane*,
　628 F.3d 631 (3d Cir. 2010) ..................................................................13, 14

*Lake v. First Nationwide Bank*,
　156 F.R.D. 615 (E.D. Pa. 1994) .................................................................21

*Lewis v. Curtis*,
　671 F.2d 779 (3d Cir. 1982) ........................................................................18

*Manno v. Healthcare Revenue Recovery Group, LLC*,
　289 F.R.D. 674 (S.D. Fla. 2013) ..................................................................3

*Marcus v. BMW of N. Am., LLC*,
　687 F.3d 583 (3d Cir. 2012) ........................................................................16

*McCall v. Drive Fin. Servs., L.P.*,
　236 F.R.D. 246 (E.D. Pa. 2006) .................................................................17

*McCurley v. Royal Seas Cruises, Inc.*,
　331 F.R.D. 142 (S.D. Ca. 2019) ...................................................................3

*McDonough v. Toys R Us, Inc.*,
　638 F. Supp. 2d 461 (E.D. Pa. 2009) ..........................................................18

*Miller v. Trans Union, LLC*,
　2017 WL 412641 (M.D. Pa. Jan. 18, 2017) ................................................20

*Mohamed v. American Motor Company, LLC,*
    320 F.R.D. 301 (S.D. Fl. 2017).............................................................16

*Murray v. New Cingular Wireless Services, Inc.,*
    232 F.R.D. 295 (N.D. Ill. 2005).............................................................20

*In re Nat'l Football League Players Concussion Injury Litig.,*
    821 F.3d 410 (3d Cir. 2016).............................................................17

*Petrolito v. Arrow Financial Services, LLC,*
    221 F.R.D. 303 (D. Conn. 2004).............................................................16

*Piper v. Portnoff Law Associates,*
    216 F.R.D. 325 (E.D. Pa. 2003).............................................................16

*In re Prudential Ins. Co. Am. Sales Prac. Litig.,*
    148 F.3d 283 (3d. Cir. 1998).............................................................12, 20, 21

*Ramirez v. Trans Union, LLC,*
    2017 WL 5153280 (N.D. Cal. Nov. 7, 2017) .............................................21, 24

*Richburg v. Palisades Collection, LLC,*
    247 F.R.D.457 (E.D. Pa. 2008).............................................................14

*Scott v. University of Delaware,*
    601 F.2d 76 (3d Cir. 1979).............................................................17

*Semper v. Gomez,*
    747 F.3d 229 (3d. Cir 2014).............................................................13

*Serrano v. Sterling Testing Sys., Inc.,*
    711 F. Supp. 2d 402 (E.D. Pa. 2010) .............................................................21

*Stewart v. Abraham,*
    275 F.3d 220 (3d Cir. 2001).............................................................14

*Stillmock v. Weis Mkts., Inc.,*
    385 Fed. App'x. 267 (4th Cir. 2010) .............................................................20

*Sullivan v. DB Invs., Inc.,*
    667 F.3d 273 (3d. Cir. 2011).............................................................12, 13

*Summerfield v. Equifax Info, Servs. LLC,*
    264 F.R.D. 133 (D.N.J. Sept. 30, 2009).............................................................20

*Taha v. Cty. of Bucks,*
    862 F.3d 292 (3d Cir. 2017).............................................................20, 21

iv

*Wachtel v. Guardian Life Insurance Co. of America*,
   453 F.3d 179 (3d. Cir. 2006)........................................................................22, 23

*Wal–Mart Stores, Inc. v. Dukes*,
   131 S. Ct. 2541 (2011) ...............................................................................15-16

*Weiss v. York Hosp.*,
   745 F.2d 786 (3d Cir. 1984)...............................................................................14

## <u>STATUTES & FEDERAL RULES</u>

Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227, *et seq*..................................*passim*

   47 U.S.C. § 227(a)(1)...........................................................................................1

   47 U.S.C. § 227(b)(1)(A)(iii) .......................................................................1, 4, 5

   Pub. L. 102–243, § 2, 105 Stat. 2394 (1991) (notes to 47 U.S.C. § 227) ..................5

FED. R. CIV. P. 23 ......................................................................................*passim*

   FED. R. CIV. P. 23(a) ...........................................................................*passim*

   FED. R. CIV. P. 23(a)(1)...................................................................................14

   FED. R. CIV. P. 23(a)(2)...................................................................................15

   FED. R. CIV. P. 23(a)(3)...................................................................................17

   FED. R. CIV. P. 23(a)(4)...................................................................................18

   FED. R. CIV. P. 23(b)...........................................................................2, 12, 19

   FED. R. CIV. P. 23(b)(3) .............................................................1, 12, 19, 21

   FED. R. CIV. P. 23(c)........................................................................................22

   FED. R .CIV. P. 23(c)(1)(B) .......................................................................22, 23

   FED. R. CIV. P. 23(c)(1)(C) ............................................................................13

   FED. R. CIV. P. 30(b)(6) ...............................................................................3, 4

## <u>OTHER AUTHORITIES</u>

2 H. Newberg, NEWBERG ON CLASS ACTIONS (4th ed. 2002) ......................................12

*In the Matter of Rules & Regulations Implementing the Telephone Consumer*
*Protection Act of 1991*,
    23 F.C.C.R. 559 (Jan. 4, 2008) ................................................................................5

*Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*,
    CG Docket No. 02-278, Report and Order (July 3, 2003).........................................................5

Plaintiffs Elizabeth Panzarella and Joshua Panzarella, by counsel, respectfully submit this memorandum of law in support of their Motion for Class Certification pursuant to FED. R. CIV. P. 23(a) and 23(b)(3).

## I.     <u>INTRODUCTION</u>

Plaintiffs brought this case against Defendant Navient Solutions, LLC ("Navient" or "Defendant") for violation of the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227(b)(1)(A)(iii) ("TCPA").  Navient is in the business of collecting defaulted student loan debts.

Plaintiffs were not student loan borrowers.  Nevertheless, Navient initiated calls to Plaintiffs' cellular telephone numbers using an automated telephone dialing system ("ATDS")[1] and/or prerecorded voice message without Plaintiffs' prior express consent regarding a debt unrelated to either of them.  And, Plaintiffs were not the only non-borrowers who were called by Navient using an autodialer.

This case follows a recent TCPA case that Navient settled on a nationwide class basis, *Baker v. Navient Solutions, LLC.*  As discussed below, Plaintiffs, like many others, patently met the criteria for inclusion in the *Baker* settlement class, and squarely fell within the class definition. However, Navient removed those people from the *Baker* class list based upon an exclusion that was not part of the settlement agreement and did not include them in the class notice.  As a result, Plaintiffs, along with many other non-borrowers, did not receive notice of the settlement. Consequently, they are not bound by the release in that case, and this action should be certified for the identical reasons as in *Baker,* reasons that Navient supported.

---

[1]     An automatic telephone dialing system, or ATDS, as defined by the TCPA, has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator, and to dial such numbers; and/or which has the capacity to dial numbers from a list without human intervention.  47 U.S.C. § 227(a)(1).

Further, Navient continued to engage in dunning non-borrowers via ATDS initiated calls to their cellular telephones without consent after the settlement class period in *Baker*.

Plaintiffs therefore propose the following class definitions:

### *Baker* Not Noticed Class

Those persons who were listed as a credit reference on a student loan application and called by Navient on a cellular telephone number without their prior consent from October 16, 2013 to July 3, 2018 using dialing technology manufactured and/or licensed by Interactive Intelligence, but were not sent notice of the class settlement in *Baker v. Navient Solutions, LLC*, C.A. No. 17-1160 (E.D. Va.).

### Post-*Baker* Class

Those persons who were listed as a credit reference on a student loan application and were called by Navient without their prior consent after July 3, 2018 on a cellular telephone number using dialing technology manufactured and/or licensed by Interactive Intelligence.

Excluded from the class definitions are: (1) persons who were listed as credit references on student loan applications and who also have student loans serviced by Navient; (2) persons or entities included within the class defined in the Final Approval Order (ECF 177) in *Johnson v Navient Solutions, Inc*., Case No. 1:15-cv-0716 (S.D. Ind.); and, (3) any employees, officers, directors of NSL, any attorneys appearing in this case and any judge assigned to hear this action.

This case is certifiable as a class action for many reasons. Primarily, Navient has already agreed that *Baker* was properly certified as a class action; hence, the *Baker* Not Noticed Class, which contains the same members, should be certified as well.

Also, in addition to meeting the requirements of Rule 23(a) and (b), there is uniformity of relief available to the Panzarellas and the Classes under the TCPA. When, as here, actual damages are difficult to quantify, statutory damages of $500 to $1,500 are an appropriate measure of relief

for the Class membership.  Many courts, both in this district and elsewhere, have certified TCPA classes for statutory damages.[2]  This is such a case.

## II.      PROCEDURAL BACKGROUND

Plaintiffs filed this action on August 31, 2018 and on December 27, 2018, filed an Amended Class Action Complaint ("Complaint") (ECF 16).  The Complaint pleads in Count I a class claim under the TCPA that Defendant placed non-emergency calls to the cellular telephone numbers of the Plaintiffs and the Classes using an automated telephone dialing system ("ATDS") with knowledge that it did not have the prior express consent of the called parties.  ECF 16, ¶¶ 45-51.[3]

The parties embarked on discovery. The parties encountered disputes concerning discovery responses and engaged in a meet-and-confer regarding Defendant's disputed responses.  Following the meet-and-confer, on or about May 31, 2019, Defendant produced supplemental responses.  However, deficiencies remained.

Plaintiffs then filed a Motion to Compel Discovery Answers (ECF 25).  Following the parties' attempts to resolve their dispute through numerous continuances of Defendant's response deadline, the Court ruled on the Motion on September 25, 2019 (ECF 43).

Plaintiffs took a Rule 30(b)(6) deposition of Mr. Joshua Dries designated by the Defendant, on September 26, 2019.  Based on the incomplete nature of that testimony, and Defendant's disclosure, for the first time, of an individual, Dennis Skinner, who had more information

---

[2]      *See, e.g., American Copper & Brass, Inc. v. Lake City Indus. Products, Inc.*, 757 F.3d 540 (6th Cir. 2014); *Johnson v. Comodo Group, Inc.*, 2020 WL 525898 (D.N.J. 2020); *McCurley v. Royal Seas Cruises, Inc.*, 331 F.R.D. 142 (S.D. Ca. 2019); *Hawk Valley, Inc. v. Taylor*, 301 F.R.D. 169 (E.D. Pa. 2014; *Manno v. Healthcare Revenue Recovery Group, LLC*, 289 F.R.D. 674 (S.D. Fla. 2013).

[3]      Plaintiffs have chosen not to pursue Count II of the Complaint under the Fair Debt Collection Practices Act.

concerning certain topics, it was clear that Plaintiffs required additional document and deposition testimony necessary to determine why and how the prior *Johnson* and *Baker* class definitions were achieved and why the class list in *Baker* was generated in a manner that removed *Baker* class members such as the Plaintiffs and a group of similarly situated consumers.  Plaintiffs therefore filed a Motion to Extend Fact Discovery Deadline on September 30, 2019 (ECF 44, ¶¶ 8, 10-14), which was granted by the Court on October 9, 2019, extending the deadline for completion of fact discovery to November 29, 2019.  (ECF 46, ¶1).

On November 25, 2019, Defendant presented Mr. Skinner as both a fact witness and also as its designee for the Rule 30(b)(6) deposition.  While Mr. Skinner testified that ascertaining class membership was certainly possible, he had not been prepared by Defendant to answer specific questions regarding numerosity.  The inability of Mr. Skinner to provide answers concerning numerosity required Plaintiffs to file a motion to compel and second request to extend fact discovery.  ECF 50.  Defendant opposed the motion and the Court has not yet ruled.

On December 11, 2019, Defendant, despite its settlement in *Baker* where it used the same autodialing system to call class members, filed a Motion for Summary Judgment on the issue whether it called Plaintiffs and class members using equipment that fit the definition of an ATDS. Plaintiffs opposed summary judgment, Defendant filed a reply brief, and Plaintiffs have moved for leave to file a sur-reply.  On March 17, 2020, Defendant moved to strike the motion for leave to file a sur-reply. ECF nos. 54, 63-66.

### III.   FACTS

#### A.   The Telephone Consumer Protection Act

In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding the proliferation of telephone calling practices involving the use of certain equipment that were found to be intrusive, a nuisance, an invasion of privacy and a risk to public

safety.[4]  *See City Select Auto Sales, Inc. v. David Randall Associates, Inc.,* 885 F.3d 154, 163-64 (3d Cir. 2018) (Shwartz, J., concurring), *citing Mey v. Got Warranty, Inc*., 193 F.Supp.3d 641, 645-46 (N.D.W.V. 2016) (intangible harms resulting from unwanted telephone calls include invasion of privacy, electronic intrusion on cell phone capacity, waste of time, and risk of personal injury due to interruption and distraction.

The TCPA vests the Federal Communications Commission ("FCC") with authority to issue rules and regulations implementing the TCPA.[5]  Section 227(b)(1)(A)(iii) of the TCPA makes it unlawful for any person or entity to make any call using an automatic telephone dialing system ("ATDS" or "autodialer") or an artificial or prerecorded voice to a cellular telephone number without the prior express consent of the called party.

In 2008, the FCC issued a Declaratory Ruling that qualified the "prior express consent" exemption with respect to calls made in relation to a debt, specifying that "consent is deemed to be granted only if the cellular number called: '(1) was provided by the consumer to the creditor; and (2) was provided during the transaction that resulted in the debt owed.'"[6]

## B.     **The Experience of Plaintiffs Panzarella**

As set forth in the Complaint, Plaintiffs Elizabeth Panzarella and Joshua Panzarella were, respectively, mother and brother of Matthew Panzarella, a student loan borrower of Navient.  At no time did the Plaintiffs ever authorize Navient to call their cell phones in connection with Matthew's debt.

---

[4]     *See* Pub. L. 102–243, § 2, 105 Stat. 2394 (1991) (notes to 47 U.S.C. § 227).

[5]     *See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order (July 3, 2003).

[6]     *See In the Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 F.C.C.R. 559, 564-65 (¶ 10) (Jan. 4, 2008).

Beginning in or around October 2017, Navient initiated autodialed calls to Plaintiff Elizabeth Panzarella multiple times on her cellular phone (the "1705 number"). Navient's voicemails incorrectly asserted that Mrs. Panzarella's cell phone number was associated with her son, Matthew Panzarella.  Beginning in or around December 2017, Navient initiated autodialed calls to Plaintiff Joshua Panzarella's cellular telephone (the "1692 number") on multiple occasions. Navient left voicemails directed to Matthew Panzarella based on the incorrect assumption that Joshua Panzarella's cell phone number was associated with his brother Matthew.  Plaintiffs believe that Navient obtained both of their cell phone numbers by means of a "skip trace" process through a third-party vendor.[7]  Neither Plaintiff ever provided Navient with prior express consent to call their cellular telephone numbers because they were only listed as credit references for Matthew's loan.

All telephone contact by Navient to Elizabeth and Joshua Panzarella's cell phones occurred via an ATDS.   Specifically, the calls at issue were made by Navient to Plaintiffs' and Class members' cellular telephone numbers using the "Noble" dialing system, and/or the "Interactive Intelligence" dialing system, which at all material times had the present capacity to store or produce telephone numbers to be called, using a random or sequential number generator, and to dial such numbers, and also had the present capacity to operate as "predictive dialers" when initiating outbound calls to cellular telephone numbers.

The Plaintiffs contend that unwanted telephone calls cause concrete harm.  If a consumer has a prepaid cell phone or limited minute plans, unwanted calls deplete limited minutes that the consumer has paid for.  In addition, such calls deplete a cell phone's battery, and the cost of

---

[7]      Defendant has conceded that Plaintiffs' respective telephone numbers were cellular telephone numbers when Defendant dialed said numbers. *See* Exhibit 1, Navient's Answers to Interrogatories, no. 10; Exhibit 2, Deposition of Joshua Dries ("Dries Dep.") 69:21-70:10.

electricity to recharge a telephone is a tangible harm.  Further, as Congress found when the TCPA was drafted, such calls cause intangible harm such as invasion of privacy, trespass, nuisance, intrusion and pose a risk to personal safety.

Each of the unwanted autodialed calls at issue occupied Plaintiffs Elizabeth and Joshua Panzarella's respective cellular telephone lines, even when the call was not answered, rendering the line unavailable for Plaintiffs to use for any other purpose and creating a significant and material safety risk by making the line unavailable for emergency use.  Plaintiffs considered these unwanted autodialed calls to be intrusive, annoying and an invasion of their privacy.

Plaintiffs further contend that their Congressionally granted rights to remain free of unfair and unconscionable means to collect or attempt to collect debt, of attempts to collect money from them for which there was no basis in contract or law, were all denied by Defendant.  These rights were designed by Congress to protect against invasions of individual privacy, and Defendant deprived Plaintiffs of those rights.

**C.    Navient's Common Auto Dialing Practice**

This is not the first TCPA lawsuit against Navient for its autodialing practices.[8]

As noted above, the more recent case, and the case that helps to define the Classes proposed for certification here, is *Baker v. Navient Solutions, LLC,* C.A. No. 17-1160 (E.D. Va.).  In *Baker,* the settlement class was defined as "[e]ach person throughout the United States who was: (1) listed as a credit reference on a student loan application; and (2) called by NSL on a cellular telephone

---

[8]      Three years ago, in the case of *Johnson v. Navient Solutions, LLC*, C.A. No. 15-716 (S.D. Ind.), a TCPA class settlement was settled on behalf of "[e]ach person and entity throughout the United States: (a) to whom Navient Solutions, LLC ("NSL") placed one or more telephone calls; (b) directed to a telephone number assigned to a cellular telephone service; (c) by using an automatic telephone dialing system; (d) after NSL designated the telephone number to which it placed the call(s) as a wrong number; (e) between May 4, 2011 and January 26, 2017." *Johnson,* ECF 177. ¶ 2.  The *Johnson* settlement received final approval on July 13, 2017. *Id.*

number using dialing technology manufactured and/or licensed by Interactive Intelligence from October 16, 2013 to July 3, 2018." *Baker*, ECF 89 p. 5.   The *Baker* settlement received final approval on February 8, 2019.  *Baker*, ECF 92.  The court noted Navient's representation that the settlement class consisted of approximately 300,000 members.  *Id*. ¶ 2. Discovery later showed that Plaintiffs Panzarella and many other persons were members of the *Baker* class but were arbitrarily culled out and thus did not receive notice of that settlement.  That culling out resulted in a group of *Baker* class members, Plaintiffs and others, as defined in the *Baker* Not Noticed Class, *supra*.

Notwithstanding its knowledge of the impropriety of its autodialing practice following its agreements in the *Baker* and *Johnson* settlements, Navient nonetheless continued the practice of calling the cell numbers of persons associated with a borrower without the consent of the called party.  Ms. Patricia Peterson, one of Navient's witnesses, testified as follows:

> Q.   Okay.  And I think you said before, since Baker, Navient has not changed that practice, correct?    It still calls references in connection with attempting to locate debtors?
> A.   Correct.  We -- we have to in the case of our federal student loans.
> Q.   Okay.  And then in the case of nonfederal student loans, but you -- it still does that, correct?
> A.   Yes.

*See* deposition testimony of Patricia P. Peterson, Exhibit 3, 56:23-57:7.  As such, the Post-*Baker* Class continues to expand, and Plaintiffs are typical of those called parties.

Plaintiffs learned in discovery that the culling out of certain class members from the *Baker* settlement was handled by a previously undisclosed Navient employee, Mr. Skinner, who was represented to be the most knowledgeable person concerning that culling out process.  Plaintiffs learned from Mr. Skinner's deposition that Defendant's database systems are searchable to identify members of the Classes that Plaintiffs propose for certification.  Mr. Skinner testified that Navient has the ability to ascertain and identify all non-borrowers called by Navient using the ATDS

technology during the class period of the *Baker* class settlement who were associated or listed as credit references, *i.e.*, members of the *Baker* class, yet never received notice of the *Baker* settlement:

> Q. Okay.  And what did you actually do in connection with the Baker settlement?
>
> A. I pulled all calls, from the ININ dialer, matched that up to telephone numbers, and identified two that telephone number reference borrower, co-borrower flags.
>
> Q. Okay.  Now, in connection with doing that, did you make any records of that, in other words, is there any -- can you go back and see what you obtained?
>
> A. I still have some of the data sets. Yes.
>
> Q. Okay.  And what format do you have those data sets?
>
> A. They are in HADOOP, they are data tables.
>
> Q. And what's contained within those data sets or data tables?
>
> A. Names, telephone numbers, those flags that I referenced.
>
> Q. So do those data sets and tables basically contain the results of the search and queries that you ran in connection with Baker?
>
> A. That is correct.

Deposition of Dennis Skinner ("Skinner Dep."), Exhibit 4, at 27:22-28:21.

> Q. Am I correct for all of these different groups that you pulled, you could identify those numbers.  Is that right?
>
> A. That is correct.
>
> Q. All right.  Now, were you also able to identify borrower numbers?
>
> A. That is correct.
>
> Q. People would were listed as being a borrower.  Is that right?
>
> A. That is correct.
>
> Q. Now were you able to determine whether or not there as you an overlap between people who fell within the category of credit reference or any other third party, and borrower?
>
> A. I did not look into that.
>
> Q. Okay.  Could that have been done?
>
> A. Yes.

*Id.* at 36:24-37:16.

> Q. … So I want to find out about whether you have knowledge about the topics that were served in this case. So the 30(b)(6) first topic in case pertained to a witness who has knowledge regarding the following.  "The number of persons who were listed as a credit reference on a student loan application." And two, "Called by NSL on a cellular telephone number using dialing technology manufactured and/or licensed by Interactive Intelligence from October 16, 2013, to

9

July 3, 2018, but who were not sent notice of the Baker class settlement." Do you know the answer
to that question?

    A. No.

    Q. Okay. Could you find out the answer to that question?

    A. I could find out the answer to the question.

*Id.* at 71:8-72:3.

    Q.    Yeah. So I think as I said before,   you could identify, correct me if I'm wrong, sir,
all of the people who fell within Elizabeth and Josh Panzarella's category, meaning they had a
reference flag, and they also had a borrower, co-borrower flag. You could identify all those people.
Is that correct?

    A.    I could identify telephone numbers that met that demographic. Yes.

*Id.* at 76:24-77:8.

    Q.    Mr. Skinner, turning back to Skinner 3. The next topic in the notice of deposition
asked for a witness who was knowledgeable regarding the following: Number two, "The number
of persons who were listed as a credit reference on a student loan application called by NSL on a
cellular telephone number using dialing technology manufactured and/or licensed by Noble
Systems Corporation and/or Interactive Intelligence, from September 1, 2012, to the present and
who disputed owing the debt and/or being called by NSL." Do you see that topic?

    A.    That is correct.

    …

    Q.    Okay. Would you agree with me that, as before, you could, if you wanted to, identify
persons who were listed as a credit reference on a student loan application?

    A.    That is correct.

    Q.    Okay. And you could identify people who were called by NSL on a cellular telephone
number using dialing technology manufactured and/or licensed by Noble Systems Corporation
and/or Interactive Intelligence?

    A.    That is correct.

*Id.* at 77:20-78:24.

    Mr. Skinner specifically testified that he could identify and ascertain the membership of a

post-*Baker* settlement class, such as the *Baker* Not Noticed Class proposed here:

    Q. Okay. So am I correct that if to this day, credit references were still being called post
the Baker time period, and you were asked to identify a Baker two or a second Baker class, you
could identify that. Is that right?

    A. Hypothetically, yeah. I mean, if it's in the interest of the company to have me put that
on my priority list, yes. But right now I don't have that on my list and I have other priorities right
now, unfortunately.

*Id.* at 82:18-83:3.

Mr. Skinner also testified that notwithstanding this litigation, Navient still has not corrected its systems to prevent credit references from being wrongly flagged as borrowers or co-borrowers:

> Q. So the 30(b)(6) first topic in case pertained to a witness who has knowledge regarding the following. "The number of persons who were listed as a credit reference on a student loan application. And two, called by NSL on a cellular telephone number using dialing technology manufactured and/or licensed by Interactive Intelligence from October 16, 2013 to July 3, 2018, but who were pots [sic] sent notice of the Baker class settlement." Do you know about the answer to that question?
> A. No.
> Q. Okay. Could you find out the answer to that question?
> A. I could find out the answer to the question.

*Id*. at 71:10-72:3.

Mr. Skinner conceded it was wrong for Navient's systems to mix flags for or descriptions of persons like Plaintiffs Panzarella who were only credit references:

> Q. Okay. And do you have any idea why if somebody were being identified as a borrower, or a co-borrower, they would also be a credit reference for that same loan?
> A. For the same loan?
> Q. Yes.
> A. I find that not plausible. I mean anything is plausible, but I don't know think – I don't know why you would [be] a reference on your own loan.

*Id*. at 70:1-10.

Navient thus concedes it continues to contact non-borrowers regarding debts they do not owe, using the same technology it has used for years.

## IV.   ARGUMENT

### A.   Legal Standards Governing Class Certification

The United States Supreme Court has noted that "[c]lass actions serve an important function in our system of civil justice." *Gulf Oil Co. v. Barnard*, 452 U.S. 89, 99 (1981). "Rule 23 is designed to assure that courts will identify the common interests of class members and evaluate

the named plaintiff's and counsel's ability to fairly and adequately protect class interests." *In re Prudential Ins. Co. Am. Sales Prac. Litig.*, 148 F.3d 283, 308 (3d. Cir. 1998).

Plaintiffs must establish each of the four threshold requirements of subsection (a) of Rule 23, namely: "numerosity," "commonality," "typicality," and "adequate representation." *Montgomery Cty., Pa. ex rel. Becker v. MERSCORP, Inc.*, 298 F.R.D. 202, 209 (E.D. Pa. 2014) (quoting FED. R. CIV. P. 23(a)).  Plaintiffs must also show that this action qualifies for class treatment under at least one of the subdivisions of Rule 23(b).  *See Johnston v. HBO Film Management, Inc.*, 265 F.3d 178, 183 (3d Cir. 2001).  Under Rule 23(b)(3), a class action will be appropriate where "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  FED. R. CIV. P. 23(b)(3).

Plaintiffs bear the burden of establishing each element of Rule 23 by a preponderance of the evidence.  *In re Hydrogen Peroxide Antitrust Litigation,* 552 F.3d 305, 320 (3d Cir. 2008).  Once a plaintiff has demonstrated a preliminary legal showing that the requirements of Rule 23 have been met, the burden of proof is upon the defendant to demonstrate otherwise.  2 H. Newberg, NEWBERG ON CLASS ACTIONS (4th ed. 2002) ("NEWBERG") §7.22 at 70-71.

The district court must conduct a "rigorous analysis" of the evidence and arguments in making the class certification decision.  *In re Hydrogen Peroxide Lit.,* 552 F.3d at 318.  That said, a district court "may inquire into the merits of the claims presented in order to determine whether the requirements of Rule 23 are met, *but not* in order to determine whether the individual elements of each claim are satisfied." *Sullivan v. DB Invs., Inc*., 667 F.3d 273, 305 (3d. Cir. 2011) (emphasis

12

added).  Further, any findings for the purpose of class certification "do not bind the fact-finder on the merits."  *Id.* at 318.

The determinations called for by Rule 23 are questions addressed to the sound discretion of the district court.  *Gulf Oil Co.*, 452 U.S. at 100.  A decision to grant class certification is not a final order; it may be altered or amended as the case progresses towards resolution on the merits.  FED. R. CIV. P. 23(c)(1)(C).

### 1.   The Requirements of FED. R. CIV. P. 23(a)

Rule 23(a) establishes four prerequisites for the maintenance of a class action:

(a)     The class is so numerous that joinder of all members is impracticable;

(b)     There are questions of law or fact common to the class;

(c)     The claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(d)     The representative parties will fairly and adequately protect the interests of the class.

FED. R. CIV. P. 23(a).

Each of these requirements is met here.  In fact, Navient has already conceded, at least as to the *Baker* Not Noticed Class, that class certification is appropriate.  Navient joined in seeking certification of the *Baker* settlement class, and all the members of the proposed *Baker* Not Noticed Class were members of the *Baker* settlement class.  Navient can advance no principled rationale why it should not be estopped from opposing certification of the Baker Not Noticed Class here when it already took the position that those individuals were appropriately members of a certified class in *Baker*.  *Semper v. Gomez*, 747 F.3d 229, 247 (3d. Cir 2014) ("Judicial estoppel is a fact-specific, equitable doctrine, applied at courts' discretion." *In re Kane,* 628 F.3d 631, 638 (3d Cir. 2010). It rests on the basic notion that, "'absent any good explanation, a party should not be allowed to gain an advantage by litigation on one theory, and then seek an inconsistent advantage

by pursuing an incompatible theory.'" *Id.* (quoting *Krystal Cadillac–Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp.,* 337 F.3d 314, 319–20 (3d Cir.2003)).

### a.      Numerosity

Rule 23(a)(1) of the Federal Rules of Civil Procedure requires that the class be "so numerous that joinder of all members is impracticable." *Weiss v. York Hosp.*, 745 F.2d 786, 808 (3d Cir. 1984).  The Third Circuit has held that generally a class with more than 40 will satisfy the numerosity requirement.  *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001).

Courts are permitted to "accept common sense assumptions" about the numerosity requirement.  *Richburg v. Palisades Collection, LLC*, 247 F.R.D.457, 462 (E.D. Pa. 2008), quoting *In re Linerboard Antitrust Litig.*, 203 F.R.D. 197, 205 (E.D. Pa. 2001).  Here, where the Defendant's business is debt collection and it has engaged in a multi-year practice of that activity during the class period, numerosity may be presumed.

Further, this Circuit has held in a TCPA case that at this stage of the case, Plaintiffs do not have to identify all class members, but only show that class members can be identified.  *City Select Auto Sales Inc. v. BMW Bank of N. Am. Inc.*, 867 F.3d 434, 439 (3d Cir. 2017) (vacating and remanding denial of class certification in TCPA matter) (citation and internal quotation marks omitted). "[P]laintiff need not be able to identify all class members at class certification—instead, a plaintiff need only show that class members *can* be identified." *Id.* (citation and internal quotation marks omitted). "Affidavits, in combination with records or other reliable and administratively feasible means, can meet the ascertainability standard." *Id.* at 441 (citation omitted).

Also, as a practical matter, the actual number of members of the Post-*Baker* Class can be easily and accurately calculated by extrapolating the rate of calls in the *Baker* case.  In *Baker*, there

were approximately 332,678[9] persons called by Navient "using dialing technology manufactured and/or licensed by Interactive Intelligence from October 16, 2013 to July 3, 2018." *Baker*, ECF 89 p. 5. That is a period of 1,720 days or about 193 calls made per day. Applying the rate of 193 daily calls to the Post-*Baker* period from July 3, 2018 to the present, a period of 625 days, leads to a Post-*Baker* Class in the range of 120,625 persons.

As an additional requirement, our Court of Appeals has held that membership in the class, *vel non,* must be "currently and readily ascertainable based on objective criteria." *City Select Auto Sales Inc. v. BMW Bank of N. Am., Inc.*, 867 F.3d 434, 439 (3d Cir. 2017). "[A]t the certification stage, the plaintiff need not identify the actual class members. He need only show how class members *can* be identified." *Boyle v. Progressive Specialty Ins. Co.*, 326 F.R.D. 69, 83 (E.D. Pa. 2018) (citing *City Select*).

While Navient has refused to answer discovery concerning the specific number of non-borrowers it has called, Mr. Skinner has admitted that number could be ascertained. This plainly satisfies the "ascertainably" requirement applied by the courts. *See Harlan v. Transworld Sys., Inc.*, 302 F.R.D. 319, 328, n. 14 (E.D. Pa. 2014) (element met where defendant "has already ascertained, from its records, the names and last known addresses of" class members).

The numerosity element of Rule 23(a) is easily met.

  b. **Commonality**

To satisfy Rule 23(a)(2), there must be "questions of law or fact common to the class." Satisfaction of the commonality requirement requires that plaintiffs demonstrate that their claims "depend upon a common contention," the resolution of which "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal–Mart Stores, Inc. v. Dukes,* 131 S.

---

[9] *See* Declaration of Settlement Administrator, *Baker* ECF 89-1, ¶ 4.

Ct. 2541, 2551 (2011).  "Commonality does not require an identity of claims or facts among class members; instead, [t]he commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class."  *Johnston,* 265 F.3d at 184 (internal quotation marks omitted); *see also Marcus v. BMW of N. Am., LLC,* 687 F.3d 583, 597-98 (3d Cir. 2012).[10]

Here, the common legal and factual questions include whether Defendant's calls to Plaintiffs and the Classes were in violation of the TCPA.  That this is an issue common to the Classes is underlined by the pending briefing on Defendant's Motion for Summary Judgment. Defendant contends that the ININ system it used to call the Plaintiffs was not an ATDS.  ECF 54. Plaintiff contends in response, supported by an expert opinion, that the system is in fact an ATDS within the meaning of the TCPA.  ECF  63, 65-3.

Commonality in TCPA cases where a defendant has engaged in the same practice as to all class members has been easily satisfied.  *See, e.g., Mohamed v. American Motor Company, LLC,* 320 F.R.D. 301, 313 (S.D. Fl. 2017) (common questions included whether text messages were sent by ATDS); *City Select Auto Sales, Inc. v. David Randall Associates, Inc.*, 296 F.R.D. 299, 314 (D.N.J. 2013), and cases cited therein.    The commonality element of Rule 23(a) is satisfied here.

---

[10]    Courts generally find a wide variety of claims may be established by common proof in cases involving standardized procedures or practices.  *See e.g.*, *Jordan v. Commonwealth Fin. Sys., Inc.*, 237 F.R.D. 132, 137 (E.D. Pa. 2006) (commonality present when lawsuit "hinge[d] upon standardized mailings of illegal form letters to members of the proposed class."); *see also Petrolito v. Arrow Financial Services, LLC*, 221 F.R.D. 303 (D. Conn. 2004) (defendant's uniform practice of purchasing written-off debt for purpose of collection or instituting suit); *Piper v. Portnoff Law Associates*, 216 F.R.D. 325 (E.D. Pa. 2003) (uniform collection letters and common practice of charging unreasonable attorney fees).  Courts have held that the commonality requirement is satisfied when "the defendants have engaged in standardized conduct towards members of the proposed class by mailing them allegedly illegal form letter or documents."  *Good v. Nationwide Credit, Inc.*, 314 F.R.D. 141, 151-52 (E.D. Pa. 2016) (quoting *Saunders v. Berks Credit and Collections, Inc.*, No. 00-cv-3477, 2002 WL 1497374, at *6 (E.D. Pa. July 11, 2002).

c.   **Typicality**

Rule 23(a)(3) requires that the claims of the named plaintiff be typical of the claims of the class.  *MERSCORP,* 298 F.R.D. at 211; *McCall v. Drive Fin. Servs., L.P.*, 236 F.R.D. 246, 250 (E.D. Pa. 2006).  A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory.  *In re Nat'l Football League Players Concussion Injury Litig.,* 821 F.3d 410, 428 (3d Cir. 2016).  Typicality is a "low threshold."  *Id.*  The typicality requirement may be satisfied even if there are some factual distinctions between the claims of the named Plaintiffs and those of other class members.  *Id*.

The measure of whether a plaintiff's claims are typical is whether the nature of plaintiff's claims, judged from both a factual and a legal perspective, are such that in litigating her personal claims she can reasonably be expected to advance the interest of absent class members.  *Scott v. University of Delaware*, 601 F.2d 76, 84 (3d Cir. 1979).  *See also In re Data Access Sys. Sec. Litig.*, 103 F.R.D. 130, 139 (D.N.J. 1984) (citing NEWBERG) (the majority of class action decisions have held that typicality is satisfied when it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented). Where an action challenges a policy or practice, the named plaintiffs suffering one specific injury from the practice can represent a class suffering other injuries, so long as all the injuries are shown to result from the practice.  *General Tel. Co. of Southwest v. Falcon,* 457 U.S. 147, 157 (1982).

Here, the Panzarellas' claim is entirely typical.  The legal claims are the same and the evidence is the same.  Like every member of the proposed Classes, Plaintiffs are non-borrowers who were autodialed by Navient, without their consent, about a debt they did not owe.  The Panzarellas seek uniform statutory damages under the TCPA for themselves and other Class

members.  By proving their own claims, they prove the claims of the Classes.  There is no question that Plaintiffs are typical.

   **d.**   <u>**Adequate Representation**</u>

  Rule 23(a)(4) requires plaintiffs to show that "the representative parties will fairly and adequately protect the interests of the class."  "Whether adequacy has been satisfied 'depends on two factors: (a) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation, and (b) the plaintiff must not have interests antagonistic to those of the class.'"  *McDonough v. Toys R Us, Inc*., 638 F. Supp. 2d 461, 477 (E.D. Pa. 2009) (quoting *New Directions Treatment Servs. v. City of Reading*, 490 F.3d 293, 313 (3d Cir. 2007).  "The second factor 'seeks to uncover conflicts of interest between named parties and the class they seek to represent.'"  *Id.* (quoting *In re Warfarin Sodium Antitrust Litig*., 391 F.3d 516, 532 (3d Cir. 2004).

  Both prongs of the "adequacy" test are met here.  First, Plaintiffs have retained counsel experienced in class action litigation to prosecute his claims and those of the class.  The firms representing Plaintiffs have been certified to represent classes under many consumer protection laws, by this Court and by courts in other districts, and have tried class actions to verdict as well.  See counsels' firm biographies and Declarations at Exhibits 5-7.

  Furthermore, adequacy is presumed and any challenge to adequacy is for Defendant to prove.  *Lewis v. Curtis*, 671 F.2d 779, 788 (3d Cir. 1982) .  Plaintiffs assert there is no conflict or antagonism of interests and have amply demonstrated their understanding of a class action, the claims in this lawsuit, the current status of the case, and their roles as class representatives.  As Elizabeth Panzarella testified at her deposition:

> Q What is your understanding of the claims that you're asserting for other people?
> A. That we're being called by a company that we really have nothing to do with the amount or the issue.

> Q    Is there anything else about the phone calls that you would complain about?
> A.    Yes.  Just that they're very annoying, distracting, and embarrassing if you turn your phone on and people are there and you're listening to your messages.

Deposition of Elizabeth Panzarella, Exhibit 8, 42:15-25.

> Q    What is your understanding of your responsibility in this case as a proposed class representative?
> A    Just to state the facts for how annoying these phone calls are, and they should not be made to people that are not involved – have anything to do with money being owed.

*Id.*, 50:4-10.

And Plaintiff Joshua Panzarella testified similarly:

> Q    What is your understanding of your role here as a proposed class representative?
> A    That I represent the rest of the class who have received phone calls unwantedly for debts that they don't owe or have nothing to do with.

Deposition of Joshua Panzarella, Exhibit 9, 18:12-17.

> Q    What do you expect to receive or achieve through this lawsuit?
> A    Basically whatever is deemed fair by the judge and jury for myself and the class that is represented.  I'm not looking for anything above and beyond anyone else.  Just whatever is deemed fair and just by the jury and judge.

*Id.*, 33:4-10.

There is no conflict between Plaintiffs and the Classes.  Accordingly, Elizabeth and Joshua Panzarella adequately represent the interests of the Classes.

### 2.    The Requirements of FED. R. CIV. P. 23(b)

In addition to meeting the prerequisites of Rule 23(a), an action must satisfy at least one of the three conditions of subdivision (b) of Rule 23.  Plaintiffs proceed  here under Rule 23(b)(3), which provides, in pertinent part, that "[a]n action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition[,] the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members[.]"  FED. R. CIV. P. 23(b)(3).  To determine this level of cohesion, "the predominance requirement focuses on whether essential elements of the class's claims can be

19

proven at trial with common, as opposed to individualized, evidence." *Taha v. Cty. of Bucks*, 862 F.3d 292, 308–09 (3d Cir. 2017).

Common issues predominate over individual issues where plaintiffs have alleged a common course of conduct on the part of a defendant. *Prudential*, 148 F.3d at 314-15. Particularly, predominance is established here where common facts about the use of an ATDS by a collection agency to contact non-borrowers and the willfulness of that defendant's conduct provide for a statutory damage remedy. *Taha,* 862 F.3d at 309.

Even more particularly, courts have regularly found that common issues are more likely to predominate in a consumer class action seeking only statutory damages. *Stillmock v. Weis Mkts., Inc.*, 385 Fed. App'x. 267, 273 (4th Cir. 2010) (reversing denial of certification of class seeking statutory damages, holding that "overarching issue by far is the liability of the defendant's willfulness"); *Gillespie v. Equifax Info. Servs., LLC*, No. 05-cv-138, 2008 WL 4614327, at *7 (N.D. Ill. Oct. 15, 2008) (certifying class action for statutory damages, finding that the predominant common issue was whether the defendant's standardized practice constituted a knowing or reckless disregard for statutory obligations); *Miller v. Trans Union, LLC*, No. 3:12-cv-1715, 2017 WL 412641, at *8-11 (M.D. Pa. Jan. 18, 2017) (report and recommendation certifying statutory damages case for class treatment); *Chakejian v. Equifax Info. Servs., LLC*, 256 F.R.D. 492, 498, 500-01 (E.D. Pa. 2009) (certifying statutory damages class action); *Summerfield v. Equifax Info, Servs. LLC*, 264 F.R.D. 133, 139, 142 (D.N.J. Sept. 30, 2009) (same).[11]

---

[11]    *See also Cavin v. Home Loan Ctr., Inc.*, 236 F.R.D. 387, 392 (N.D. Ill. 2006) (certifying class and rejecting defendant's argument that damages were an individual issue as "a nonstarter" because the class sought only statutory damages, and class members with actual damages could opt out); *Murray v. New Cingular Wireless Services, Inc.*, 232 F.R.D. 295, 302 (N.D. Ill. 2005) (certifying a class and noting "since the class is requesting statutory as opposed to actual damages, the existence of individual damages is not a barrier to class certification").

Clearly, with Navient's policies and practices demonstrating continued use of an ATDS to contact non-borrower consumers, the institutional knowledge stemming from the *Baker* and *Johnson* settlements that it should have discontinued such practices, its failure to do so presumably based on profit motives, and other common facts readily demonstrate that this trial for statutory damages of $500-$1,500 per class member can be tried with common evidence. *Taha*, 862 F.3d at 309; *see also Ramirez v. Trans Union, LLC*, No. 12-CV-00632-JSC, 2017 WL 5153280, at *6 (N.D. Cal. Nov. 7, 2017) (jury verdict for statutory damages of $8 million for class members upheld in full post-trial), *aff'd* 2020 WL 946973 (9th Cir. Feb. 27, 2020).

In addition to finding the predominance of common questions, Rule 23(b)(3) also requires that the Court determine that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  It has been widely recognized that a class action is superior to other available methods – particularly, individual lawsuits – for the fair and efficient adjudication of a suit that affects a large number of persons injured by violations of consumer protection laws or common law.  *Prudential*, 148 F.3d at 316; *Serrano v. Sterling Testing Sys., Inc.*, 711 F. Supp. 2d 402, 413 (E.D. Pa. 2010).  Consumer class actions such as the case at bar easily satisfy the superiority requirement of Rule 23.  *Id*. at 413; *see also Lake v. First Nationwide Bank*, 156 F.R.D. 615, 626 (E.D. Pa. 1994) (public interest in seeing that rights of consumers are vindicated favors disposition of claims in a class action).

Likewise, the superiority requirement is satisfied here.  Defendant has violated the rights of large number of geographically dispersed persons to such an extent that the cost of pursuing individual litigation to seek recovery against a well-financed adversary is not feasible.  Thus, the alternatives to a class action are either no recourse for thousands of consumers, or even in the unlikely event that they all become aware of their rights and could locate counsel, a multiplicity

of scattered suits resulting in the inefficient administration of litigation.   The common and predominating factual and legal issues noted above mean this matter is capable of efficient, class-wide adjudication on the merits.   Accordingly, a class action is superior to other available methods for the fair and efficient adjudication of this matter.

This class action would be easily manageable.   Only statutory damages, not individual actual damages, are sought.   This case presents no manageability difficulties that would preclude class certification.

**B.** **Appointment and Approval of Class Counsel Is Warranted**

As previously addressed above, Plaintiffs have chosen counsel with extensive experience in handling consumer class actions.   Plaintiffs submit that their counsel should be designated as Class Counsel.

**C.** **Plaintiffs' Trial Plan**

In *Wachtel v. Guardian Life Insurance Co. of America*, the Third Circuit, finding itself in "uncharted waters," considered a matter of first impression under the amendments to Rule 23 which were effective December 1, 2003.   453 F.3d 179, 184 (3d. Cir. 2006).   Specifically, the Court addressed the provisions of Rule 23(c)(1)(B), which states "An order certifying a class action must define the class and the class claims, issues or defenses[.]"   FED. R. CIV. P. 23(c)(1)(B).   The Court concluded that the plain text of Rule 23(c) as amended now:

> [R]equires more specific and more deliberate treatment of the class issues, claims and defenses than the practice described above has usually reflected.   More specifically, in our review, the proper substantive inquiry for an appellate tribunal reviewing a certification order for Rule 23(c)(1)(B) compliance is whether the precise parameters defining the class and a complete list of the claims, issues, or defenses to be treated on a class basis are readily discernible from the text either of the certification order itself or of an incorporated memorandum opinion.

*Wachtel*, 453 F.3d at 185.   The Court summarized its holding as follows:

> In summary, we hold that the requirement of Rule 23(c)(1)(B) that a certification order "define the class and the class claims, issues, or defenses," means that the text of the order or an incorporated opinion must include (1) a readily discernible, clear, and precise statement of the parameters defining the class or classes to be certified, and (2) a readily discernible, clear, and complete list of the claims, issue or defenses to be treated on a class basis.

*Id.* at 187-88.

In addition, the Court of Appeals addressed the practice of submitting a "trial plan" that could be used to facilitate Rule 23(c)(1)(B) compliance. While stopping short of requiring such a plan in every case, the *Wachtel* court expressed its belief that the pre-certification presentation of a trial plan is "an advisable practice within the class action arena." *Id*. at 188, n. 7.

Plaintiffs' accompanying proposed class certification Order has been drafted to comply with the requirements of Rule 23(c)(1)(B) that the class and class claims and issues be specifically defined, in light of *Wachtel*'s comment that a "sufficient certification order must, in some clear and cogent form, define the claims, issue or defenses to be treated on a class basis[.]" *Id*. at 187-88.

Further, while a trial plan is not a mandated component of a motion for class certification, *Wachtel* considers such a plan an advisable practice. As such, Plaintiffs propose the following for the Court's consideration:

1.      Plaintiffs will present their individual cases.

2.      Unless a directed verdict is appropriate at the close of Plaintiffs' individual presentation, their individual cases will be presented to the jury for determination.

3.      Plaintiffs' cause of action is for violation of the TCPA.

4.      The jury will be asked to determine whether Navient violated the TCPA and whether that violation is in reckless disregard of Plaintiffs' TCPA rights.

5.      If the jury returns a verdict against Plaintiffs, the trial will end and judgment against Plaintiffs and the Classes will be entered for statutory damages. If

the jury finds for Plaintiffs, the Court can render a judgment for the Classes based on the jury findings.

6.      Final judgment will be based upon the jury verdict.

As shown by the above, trial of this class action will be relatively straightforward. A similar class action trial for statutory damages lasted eight days in total and was entirely manageable. *Ramirez v. Trans Union, LLC*, *supra*. The practice at issue is common to all members of the Classes. A jury's review of that practice will result in a determination whether the Defendant violated the TCPA and judgment can then be entered based on that verdict.

## V.    <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that this Court grant this motion and enter the proposed order submitted herewith.

Dated: March 20, 2020               FRANCIS MAILMAN SOUMILAS, P.C.

          */s/ James A. Francis*
          James A. Francis
          David A. Searles
          1600 Market Street, Suite 2510
          Philadelphia, PA 19103

          ROBERT P. COCCO, P.C.
          Robert P. Cocco, Esquire
          1500 Walnut Street, Suite 900
          Philadelphia, PA 19102
          (215) 351-0200

          David P. Mitchell, Esq.
          Florida Bar No. 067249
          MANEY & GORDON, P.A.
          101 East Kennedy Blvd., Suite 3170
          Tampa, Florida 33602
          Telephone: (813) 221-1366
          Fax: (813) 223-5920
          David@MitchellConsumerLaw.com

          *Attorneys for Plaintiffs and the Classes*