# Exhibit 4



Deposition of:
# Dennis L. Skinner , Jr.

*November 25, 2019*

In the Matter of:

# Panzarella Et Al Vs. Navient Solutions Inc

Veritext Legal Solutions
800.808.4958 | calendar-de@veritext.com |

```
                                                              Page 1
 1                            - - -
 2                UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF PENNSYLVANIA
 3
                              - - -
 4
      ELIZABETH PANZARELLA and  :  CIVIL ACTION
 5    JOSHUA PANZARELLA,        :
      individually and on       :
 6    behalf of all others      :
      similarly situated,       :
 7           Plaintiffs         :
                                :
 8           vs.                :
                                :
 9    NAVIENT SOLUTIONS, LLC,   :
             Defendant          :  NO. 2:18-cv-03735 PBT
10
                              - - -
11
                  MONDAY, NOVEMBER 25, 2019
12
                              - - -
13         Video Deposition of DENNIS L. SKINNER, JR.
14    taken at GREENBERG TRAURIG, 1007 N. Orange Street,
15    Suite 1200, Wilmington, Delaware, commencing at 9:30
16    a.m., before John P. Donnelly, a Registered
17    Professional Reporter, and Notary Public in and for
18    the Commonwealth of Pennsylvania and the State of
19    Delaware.
20
                              - - -
21
22              VERITEXT LEGAL SOLUTIONS
             Registered Professional Reporters
23             300 Delaware Avenue, Suite 815
                   Wilmington, DE 19801
24                   (302)571-0510
```

```
 1      APPEARANCES:
 2
                FRANCIS MAILMAN SOUMILAS
 3              BY:  JAMES A. FRANCIS, ESQUIRE
                1600 Market Street
 4              Suite 2510
                Philadelphia, PA 19103
 5              215-735-8600
                jfrancis@consumerlaw.com
 6              Representing the Plaintiffs
 7
                LAW OFFICES OF ROBERT P. COCCO
 8              BY:  ROBERT P. COCCO, ESQUIRE
                1500 Walnut Street
 9              Suite 900
                Philadelphia, PA 9102
10              215-351-0200
                rcocco@rcn.com
11              Representing the Plaintiffs
12
                GREENBERG TRAURIG, LLP
13              BY:  LISA SIMONETTI, ESQUIRE
                1840 Century Park East
14              Suite 1900
                Los Angeles, CA 90067
15              310-586-7824
                simonetti@gtlaw.com
16              Representing the Defendant
17
                            - - -
18
19      ALSO PRESENT:
20
21
                            - - -
22
23
24
```

Dennis L. Skinner, Jr.
DENNIS L. SKINNER, JR.

Page 4

1       THE VIDEOGRAPHER:  Good morning.  We
2  are going on the record at 9:36, on
3  November 25, 2019.  Please note that the
4  microphones are sensitive and may pick up
5  whispering and private conversations.
6  Please turn off all cell phones or place
7  them away from the microphones as they can
8  interfere with the deposition audio.
9       This is media unit number one of the
10 video deposition of Dennis Skinner in the
11 matter of Elizabeth and Joshua Panzarella
12 versus Navient Solutions, filed in the US
13 District Court for the Eastern District of
14 Pennsylvania, case number 2:18-cv-03735 PBT.
15 The deposition is being held at Greenberg
16 Traurig located 1007 North Orange Street,
17 Wilmington, Delaware.  My name is Michael
18 Varincovitch from the firm Veritext, I am
19 the videographer.  The court reporter is
20 John Donnelly of the firm Veritext.  Would
21 counsel please announce their appearance for
22 the record.
23      MR. FRANCIS:  Yes, this is Jim
24 Francis, from Francis Mailman Soumilas, on

Page 5

1    behalf of the plaintiff.  And with me is my
2    co-counsel, Bob Cocco.
3            MS. SIMONETTI:  Lisa Simonetti for
4    defendant.
5            THE VIDEOGRAPHER:  The time is now
6    9:37, would the court reporter please swear
7    in the witness.
8            DENNIS L. SKINNER, JR., having been
9    duly sworn or affirmed, testified as
10   follows:
11           MR. FRANCIS:  Before I begin, I will
12   just place one correction to the
13   introduction on the record, and that is
14   Mr. Skinner is appearing pursuant to a rule
15   30(b)(1) in his own capacity, as well as --
16   or he was noticed by way of a Rule 30(b(6)
17   notice of deposition.  We will determine
18   later whether or not he is actually sitting
19   in that capacity, but I just want to make it
20   clear that there were two deposition notices
21   served for today.
22           Sir, would you please state and spell
23   your full name for the record?
24        A.    Yes, my name is Dennis L. Skinner,

Case 2:18-cv-03735-PBT   Document 67-5   Filed 03/20/20   Page 7 of 20
Dennis L. Skinner , Jr.
DENNIS L. SKINNER, JR.

Page 27

1           Q.     Okay.  And by that do you mean what
2    you turned into one or more search queries?
3           A.     That is correct.
4           Q.     All right.  And as you sit here
5    today, are you generally familiar with the search
6    and query capabilities of the HADOOP system?
7           A.     That is correct.
8           Q.     And did you utilize those search and
9    query capabilities in connection with fulfilling the
10   Baker queries?
11          A.     That is correct.
12          Q.     All right.  And did you actually
13   yourself design the search queries that were run in
14   Baker?
15          A.     That is correct.
16          Q.     Okay.  So let me begin by asking you
17   to summarize; what was your role in connection with
18   the Baker settlement by way of obtaining data from
19   the system?
20          A.     I was the majority stakeholder
21   pulling the data for Baker.
22          Q.     Okay.  And what did you actually do
23   in connection with the Baker settlement?
24          A.     I pulled all calls from the ININ

Case 2:18-cv-03735-PBT   Document 67-5   Filed 03/20/20   Page 8 of 20
Dennis L. Skinner , Jr.
DENNIS L. SKINNER, JR.

Page 28

```
 1    dialer, matched that up to telephone numbers, and
 2    identified two that the telephone number reference
 3    borrower, co-borrower flags.
 4           Q.    Okay.  Now, in connection with doing
 5    that, did you make any records of that, in other
 6    words, is there any -- can you go back and see what
 7    you obtained?
 8           A.    I still have some of the data sets.
 9    Yes.
10           Q.    Okay.  And what format do you have
11    those data sets?
12           A.    They are in HADOOP.  They are data
13    tables.
14           Q.    And what's contained within those
15    data sets or data tables?
16           A.    Names, telephone numbers, those flags
17    that I referenced.
18           Q.    So do those data sets and tables
19    basically contain the results of the search and
20    queries that you ran in connection with Baker?
21           A.    That is correct.
22           Q.    All right.  So I want to dig down a
23    little bit more than that.  One of the things that I
24    think you mentioned in connection with the Baker
```

Dennis L. Skinner, Jr.
DENNIS L. SKINNER, JR.

Page 36

1      Q.    Yes.
2      A.    I think there is a category called
3  reference.
4      Q.    Yes.
5      A.    But I think we pulled in more -- we
6  do more than less.  So we pull in anything that is
7  other than a borrower is what we pulled into the
8  Baker.
9      Q.    Okay.  So would this, like I was
10 asking before, so are you saying that the people
11 that you pulled in as part of the query would
12 include not just references, but if there was any
13 other third party associated with the account?
14     A.    Anybody to the account, yes.
15     Q.    Okay.  And do you know how many
16 people met that profile?
17     A.    I -- unfortunately I don't.
18     Q.    Approximately?
19     A.    Not even -- again, I would have to go
20 back.  I haven't looked at that data specifics.
21     Q.    If you went back to the system you
22 could find that out?
23     A.    That is correct.
24     Q.    And am I correct for all of these

1    different groups that you pulled, you could identify
2    those numbers.  Is that right?
3           A.    That is correct.
4           Q.    All right.  Now, were you also able
5    to identify borrower numbers?
6           A.    That is correct.
7           Q.    Okay.  People who were listed as
8    being a borrower.  Is that right?
9           A.    That is correct.
10          Q.    Now, were you able to determine
11   whether or not there was an overlap between people
12   who fell within the category of credit reference or
13   any other third party, and borrower?
14          A.    I did not look into that.
15          Q.    Okay.  Could that have been done?
16          A.    Yes.
17          Q.    You could see, am I correct, sir, by
18   Googling -- or excuse me, by -- I'm so used to
19   Googling -- by querying or searching HADOOP, you
20   could identify a group of people who met both the
21   profile of a credit reference, and also came back as
22   a borrower.  Is that right?
23          A.    That is correct.
24          Q.    All right.  Am I correct that there

DENNIS L. SKINNER, JR.

Page 70

1    Q.    Okay.  And do you have any idea why
2    if somebody were being identified as a borrower, or
3    a co-borrower, they would also be a credit reference
4    for that same loan?
5        A.    For the same loan?
6        Q.    Yes.
7        A.    I find that not plausible.  I mean,
8    anything is plausible, but I just don't think -- I
9    don't know why you would be a reference on your own
10   loan.
11       Q.    Okay.
12           MR. FRANCIS:  Lisa, I am going to
13           mark NSL802 through 817.  Can you mark this
14           as Skinner 2, please.  And then let's mark
15           Navient's objections to the amended notice
16           of deposition as Skinner 3, please.
17                          - - -
18           (Whereupon the court reporter marked
19           for identification purposes Skinner Exhibits
20           2 and 3.)
21                          - - -
22   BY MR. FRANCIS:
23       Q.    All right, just I am going to start
24   with Skinner 3, Mr. Skinner, first, then go to

Dennis L. Skinner, Jr.
DENNIS L. SKINNER, JR.

Page 71

```
1    Skinner 2.  Just works that way.  As I mentioned at
2    the beginning of the deposition, counsel for the
3    plaintiff in this case served upon Navient what's
4    called a notice of deposition pursuant to Federal
5    Rule 30(b)(6), and what that does is it asks the
6    company to produce a witness to answer certain
7    topics, or address certain topics.  Somebody who is
8    knowledgable about the topics.  So I want to find
9    out about whether you have knowledge about the
10   topics that were served in this case.  So the
11   30(b)(6) first topic in case pertained to a witness
12   who has knowledge regarding the following.
13                "The number of persons who were
14   listed as a credit reference on a student loan
15   application."  And two, "Called by NSL on a cellular
16   telephone number using dialing technology
17   manufactured and/or licensed by Interactive
18   Intelligence from October 16, 2013, to July 3, 2018,
19   but who were not sent notice of the Baker class
20   settlement."
21                Do you know the answer to that
22   question?
23        A.     No.
24        Q.     Okay.  Could you find out the answer
```

Dennis L. Skinner , Jr.
DENNIS L. SKINNER, JR.

Page 72

1   to that question?
2           A.      I could find out the answer to the
3   question.
4           Q.      Okay.  And could you find out that
5   answer to the question utilizing the data that you
6   have been testifying about for a little while now?
7           A.      Well, no -- actually, I apologize.
8   If I didn't provide it already, I can't give you
9   anything I don't have.  So -- okay -- so the
10  question was:  Can I give you the answer to this?
11  The answer is no.  I apologize.
12          Q.      Why can you not?  You have topic
13  number one in front of you?
14          A.      Topic number one, yes.
15          Q.      Why can you not?
16          A.      Because it's everybody that we
17  already identified.  So if I can't -- if I didn't
18  identify them the first time, how can I identify
19  them the second time?  That's why I am confused.
20  I'm sorry.
21          Q.      Okay.  So my question to you was; you
22  were able to identify all of the numbers that were
23  associated with a credit reference.  I think you
24  have testified to that extensively.  Is that

Dennis L. Skinner, Jr.
DENNIS L. SKINNER, JR.

Page 76

```
1           Q.    Yes.
2           A.    That is what was Baker.
3           Q.    Could you do it?
4           A.    That's what Baker was.
5           Q.    Okay.  Could you -- what's the no,
6     no -- what's the order you're using?
7           A.    No, no borrower, no co-borrower, yes
8     reference.
9           Q.    Okay.
10          A.    Which is other.
11          Q.    Could you identify yes, yes, yes?
12          A.    I could do yes, yes, yes.
13          Q.    Okay.  That's my question.
14          A.    I apologize.
15          Q.    Yes.  So you could identify the
16    people who had those three flags.  Correct?
17          A.    That is correct.
18          Q.    All right.  And you could compare
19    those people who met the three flags to the people
20    for whom you provided to counsel, and get the
21    difference in the numbers?
22          A.    Off the top of my head, I believe
23    yes.
24          Q.    Yeah.  So I think as I said before,
```

Dennis L. Skinner, Jr.
DENNIS L. SKINNER, JR.

Page 77

```
1      you could identify, correct me if I'm wrong, sir,
2      all of the people who fell within Elizabeth and Josh
3      Panzarella's category, meaning they had a reference
4      flag, and they also had a borrower, co-borrower
5      flag.  You could identify all those people.  Is that
6      correct?
7              A.    I could identify telephone numbers
8      that met that demographic.  Yes.
9                   THE VIDEOGRAPHER:  Counsel, just so
10              you know there is about a minute remaining
11              before I have to change discs.
12                  MR. FRANCIS:  Well, then why don't we
13              go off the video.
14                  THE VIDEOGRAPHER:  Time is now 11:19,
15              this concludes disc one.
16                  (A short recess was taken.)
17                  THE VIDEOGRAPHER:  Time is now 11:36,
18              this begins disc two.
19     BY MR. FRANCIS:
20             Q.    Mr. Skinner, turning back to Skinner
21     3.  The next topic in the notice of deposition asked
22     for a witness who was knowledgeable regarding the
23     following:  Number two, "The number of persons who
24     were listed as a credit reference on a student loan
```

Dennis L. Skinner, Jr.
DENNIS L. SKINNER, JR.

Page 78

```
1      application called by NSL on a cellular telephone
2      number using dialing technology manufactured and/or
3      licensed by Noble Systems Corporation and/or
4      Interactive Intelligence, from September 1, 2012, to
5      the present and who disputed owing the debt and/or
6      being called by NSL."  Do you see that topic?
7               A.    That is correct.
8               Q.    Do you know that number?
9               A.    No.
10              Q.    Have you performed any efforts or
11     have you taken any steps to try to ascertain the
12     number to topic number two?
13              A.    No.
14              Q.    Okay.  Would you agree with me that
15     as before, you could, if you wanted to, identify
16     persons who were listed as a credit reference on a
17     student loan application?
18              A.    That is correct.
19              Q.    Okay.  And you could identify people
20     who were called by NSL on a cellular telephone
21     number using dialing technology manufactured and/or
22     licensed by Noble Systems Corporation and/or
23     Interactive Intelligence?
24              A.    That is correct.
```

```
 1    were called by NSL after July 3, 2018, on a cellular
 2    telephone number using dialing technology
 3    manufactured and/or licensed by Interactive
 4    Technology."  Do you see that?
 5           A.    Yes.
 6           Q.    Do you know the answer to that
 7    question?
 8           A.    No, I do not.
 9           Q.    Do you have any information regarding
10    the number of persons who fall within that category.
11           A.    Not at the present time.
12           Q.    Okay.  Is there any reason that you
13    know of that you couldn't perform a query and
14    generate the same type of information you generated
15    in the Baker settlement now?
16           A.    Yes, I could redo Baker to the same
17    parameters now.  Yes.
18           Q.    Okay.  So am I correct that if to
19    this day, credit references were still being called
20    post the Baker time period, and you were asked to
21    identify a Baker two or a second Baker class, you
22    could identify that.  Is that right?
23           A.    Hypothetically, yeah.  I mean, if
24    it's in the interest of the company to have me put
```

Case 2:18-cv-03735-PBT   Document 67-5   Filed 03/20/20   Page 18 of 20
Dennis L. Skinner, Jr.
DENNIS L. SKINNER, JR.

Page 82

1    that on my priority list, yes.  But right now I
2    don't have that on my list and I have other
3    priorities right now, unfortunately.
4           Q.    I am sure.  Okay.  Now, would you
5    please turn to Baker -- excuse me, Skinner 2.  Okay.
6    Take as much time as you need to review this.  This
7    is a series of pages, or looks like a document from
8    the Artiva system that was produced in this case.
9    And I want to ask you some questions about it.
10          A.    Okay.
11          Q.    Would you identify this record -- do
12   you understand -- do you under -- can you identify
13   this record in general?
14          A.    In general, these look like comments.
15          Q.    Okay.  And would this -- when the
16   comments -- when you say the word comments, do you
17   mean that these would be the things that would be in
18   that screen 151?
19          A.    Normally, yeah.  That's what I would
20   expect to see.
21          Q.    Okay.  And is that what you think is
22   that Skinner 2 is a screen 151 for this particular
23   account?
24          A.    Yeah, but it's Artiva.  It's a

Veritext Legal Solutions
215-241-1000 ~ 610-434-8588 ~ 302-571-0510 ~ 202-803-8830

Page 88

1            DENNIS L. SKINNER, JR.
2                    - - -
3            C E R T I F I C A T E
4                    - - -
5
6        I do hereby certify that I am a Notary
   Public in good standing; that the aforesaid
   testimony was taken before me, pursuant to notice,
7  at the time and place indicated; that said deponent
   was by me duly sworn to tell the truth, the whole
8  truth, and nothing but the truth; that the testimony
   of said deponent was correctly recorded in machine
9  shorthand by me and thereafter transcribed under my
   supervision with computer-aided transcription; that
10 the deposition is a true and correct record of the
   testimony given by the witness; and that I am
11 neither of counsel nor kin to any party in said
   action, nor interested in the outcome thereof.
12
13       WITNESS my hand and official seal this 3RD
14 day of DECEMBER 2019.
15
16       *John P. Donnelly, RPR* (signature)
17
       _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _
18
       John P. Donnelly
19     Notary Public
20
21
22
23 Job No. 3768471
24

VERITEXT LEGAL SOLUTIONS
COMPANY CERTIFICATE AND DISCLOSURE STATEMENT

Veritext Legal Solutions represents that the foregoing transcript is a true, correct and complete transcript of the colloquies, questions and answers as submitted by the court reporter. Veritext Legal Solutions further represents that the attached exhibits, if any, are true, correct and complete documents as submitted by the court reporter and/or attorneys in relation to this deposition and that the documents were processed in accordance with our litigation support and production standards.

Veritext Legal Solutions is committed to maintaining the confidentiality of client and witness information, in accordance with the regulations promulgated under the Health Insurance Portability and Accountability Act (HIPAA), as amended with respect to protected health information and the Gramm-Leach-Bliley Act, as amended, with respect to Personally Identifiable Information (PII). Physical transcripts and exhibits are managed under strict facility and personnel access controls. Electronic files of documents are stored in encrypted form and are transmitted in an encrypted fashion to authenticated parties who are permitted to access the material. Our data is hosted in a Tier 4 SSAE 16 certified facility.

Veritext Legal Solutions complies with all federal and State regulations with respect to the provision of court reporting services, and maintains its neutrality and independence regardless of relationship or the financial outcome of any litigation. Veritext requires adherence to the foregoing professional and ethical standards from all of its subcontractors in their independent contractor agreements.

Inquiries about Veritext Legal Solutions' confidentiality and security policies and practices should be directed to Veritext's Client Services Associates indicated on the cover of this document or at www.veritext.com.