# Exhibit 8

```
1              IN THE UNITED STATES DISTRICT COURT

2          FOR THE EASTERN DISTRICT OF PENNSYLVANIA

3                          - - -

4    ELIZABETH PANZARELLA    :

5    & JOSHUA PANZARELLA,    :

6    INDIVIDUALLY & ON BEHALF

7    OF ALL OTHERS SIMILARLY:

8    SITUATED                :

9          Plaintiffs        :

10            vs.            :

11   NAVIENT SOLUTIONS, LLC :   CASE NO.

12          Defendant        :   2:18-CV-03735-PBT

13   _____

14

15

16       Oral testimony of ELIZABETH

17   PANZARELLA, taken at Greenberg Traurig, LLP,

18   1717 Arch Street, Philadelphia, Pennsylvania,

19   commencing at 9:40 a.m., before Janice L.

20   Welsh, Court Reporter and Notary Public; in

21   and for the Commonwealth of Pennsylvania,

22   Friday, September 27, 2019.

23

24   JOB No. 3563165

25   PAGES 1 - 59
```

Page 1

1 APPEARANCES:
2
3 Representing the Plaintiffs
4
5    LAW OFFICES OF ROBERT P. COCCO
6    BY:  ROBERT P. COCCO, ESQUIRE
7    1500 Walnut Street  Suite 900
8    Philadelphia, Pennsylvania 19102
9    Phone:  (215) 351-0200
10   rcocco@rcn.com
11
12
13 Representing the Defendant
14
15   GREENBERG TRAURIG
16   BY:  LISA SIMONETTI, ESQUIRE
17   1840 Century Park East
18   Suite 1900
19   Los Angeles, California 90067
20   Phone:  (310) 586-7824
21   simonettil@gtlaw.com
22
23
24
25

Page 2

1           - - -
2        ELIZABETH PANZARELLA, after
3    having been first duly sworn, was
4    examined and testified as follows:
5           - - -
6        THE REPORTER:  Usual
7 stipulations?
8        MR. COCCO:  I don't think we need
9 to read and sign.  We're fine with that.
10          - - -
11       (It is hereby stipulated and
12 agreed by and between counsel for respective
13 parties that reading, signing, sealing,
14 certification and filing are waived and that
15 all objections, except as to the form of
16 questions, be reserved until the time of
17 trial.)
18          - - -
19        EXAMINATION
20          - - -
21 BY MS. SIMONETTI:
22 Q   We had an opportunity to meet just a
23 moment ago briefly, but my name is Lisa
24 Simonetti, counsel for defendant.  Can you
25 state your full name for the record, please?

Page 4

1           I N D E X
2           - - -
3 Testimony of: Elizabeth Panzarella
4 By Ms. Simonetti . . . . . . . . 4
5
6
7
8
9        E X H I B I T S
10          - - -
11
12 NUMBER     DESCRIPTION    PAGE MARKED
13       (None Marked)
14
15
16
17
18
19
20
21
22
23
24
25

Page 3

1 A    Elizabeth Marie Panzarella.
2 Q    Have you ever gone by any other name?
3 A    Liz.
4 Q    Do you have a maiden name?
5 A    Yes.  It was Smith.
6 Q    Have you ever had your deposition taken
7 before?
8 A    Years and years ago.
9 Q    How many years ago?
10 A   25.
11 Q   In what type of matter?
12 A   I worked for Shop Rite and there was --
13 I was the front end manager, and there was a
14 child eating candy, and they arrested the
15 mother, and I just had to be there to tell
16 what I saw.
17 Q   Was that like a shoplifting case?
18 A   Yes.
19 Q   Since it has been a while I'll go over
20 the basic ground rules with you.  The court
21 reporter is taking down everything that you
22 say verbatim.  Do you understand that?
23 A   Yes.
24 Q   In order to allow her to make a clean
25 transcript, can you wait until I complete a

Page 5

2 (Pages 2 - 5)

ELIZABETH PANZARELLA

1 Q    Has Matthew ever told you at any point
2 in time that he did list you as a reference on
3 his student loan?
4 A    Unfortunately, no.  Matthew has a habit
5 of not telling me things.
6 Q    Has Matthew listed you as a reference on
7 any other credit obligation?
8 A    Not that I'm aware of.
9 Q    But he could have?
10 A    He may have.
11 Q    You told me earlier what your basic
12 understanding of a class action is.  Do you
13 remember that?
14 A    Yes.
15 Q    What is your understanding of the claims
16 that you're asserting for other people?
17 A    That we're being called by a company
18 that we really have nothing to do with the
19 amount or the issue.
20 Q    Is there anything else about the phone
21 calls that you would complain about?
22 A    Yes.  Just that they're very annoying,
23 distracting, and embarrassing if you turn your
24 phone on and people are there and you're
25 listening to your messages.

Page 42

1 Q    Do you know anything about the manner in
2 which Navient Solutions made the telephone
3 calls through its systems?
4 A    No.  I don't.
5 Q    Have you ever heard of the term auto
6 dial?
7 A    No.
8 Q    How about automatic telephone dialing
9 system?
10 A    I'm not sure.  Is that when a company
11 keeps repeatedly calling?
12 Q    I'm asking you.
13 A    That's the only thing I believe it to
14 be.
15 Q    So, you don't have any understanding
16 beyond that?
17 A    No.  I just believe it to be a system
18 that automatically keeps calling you until
19 it's resolved.
20 Q    So, in the complaint if you allege that
21 Navient initiated auto dial calls to you
22 multiple times on your cell phone, as stated
23 in paragraph 23, you mean that calls were made
24 repeatedly to you?
25 A    Yes.

Page 43

1 Q    What is a skip trace process?
2 A    I have no idea.
3 Q    Have you ever heard of a system that's
4 called a mobile dialing system?
5 A    No.
6 Q    Did you pay any more for your cell phone
7 service than you would have otherwise, based
8 on the telephone calls from Navient?
9 A    I guess I could answer that in two ways,
10 but no.
11 Q    What is the other way to answer it?
12 A    I'm just saying there was a period of
13 time when I had Matthew on my bill, and they
14 were calling him too, I guess.  His phone bill
15 was always -- that's why I cut his phone off.
16 Q    For what period of time was he on your
17 plan?
18 A    Since he was 15 up until I want to say
19 two or three years ago.
20 Q    Until he was around 29 to 30?
21 A    It may be.  He was furious with me
22 because I kept saying he had to pay his
23 portion, and he was ignoring me.  So, I told
24 him I was going to shut his phone off if he
25 didn't start paying for it because his bill

Page 44

1 was -- he used a lot of cellular data.  So,
2 there were months his bill alone would be over
3 $100.00, and he wasn't paying it, and I was
4 responsible.
5 Q    Did he have the same cell number through
6 this time period?
7 A    Yes.  He doesn't now.
8 Q    What was it?
9 A    484 -- it's been a while.
10 Q    Let me see if I can find it.  Was it
11 484-638-0910?
12 A    That may be it.  I know my other two
13 boys' numbers start with 850, and I know my
14 son David's number is 850-2136, and he has
15 received calls too from Navient.
16 Q    Do you recognize the cell number
17 610-505-0265?
18 A    That was Matt.
19 Q    Do you recognize this 484-638-0910
20 number at all?
21 A    No.  That may be one of his new numbers,
22 but I'm not sure.
23 Q    So, you mentioned that at least one of
24 your other sons was receiving calls related to
25 Matthew's loans?

Page 45

12 (Pages 42 - 45)

Veritext Legal Solutions
866 299-5127

ELIZABETH PANZARELLA

1  A    No.
2  Q    You have never heard of that?
3  A    No.
4  Q    What is your understanding of your
5  responsibility in this case as a proposed
6  class representative?
7  A    Just to state the facts for how annoying
8  these phone calls are, and they should not be
9  made to people that are not involved -- have
10 anything to do with money being owed.
11 Q    Do you know whether Navient Solutions
12 might have any obligation on federal loans to
13 attempt to locate borrowers that are
14 delinquent?
15 A    No.
16 Q    Do you have any understanding of --
17 strike that.
18          So, aside from representing
19 other people who think the calls are annoying,
20 is there anything else that you think you have
21 a duty to undertake with respect to other
22 people?
23 A    Yes.  Just that it's an invasion of
24 privacy for one thing, and it's inconvenient,
25 it's annoying, it's stressful when your phone
Page 50

1  keeps ringing and you're somewhere that you
2  have to shut your phone off.  I just don't
3  think it's right.
4  Q    Do you understand that there are two
5  claims asserted in the amended complaint?
6  A    The phone calls?
7  Q    No.  What is your understanding of what
8  the complaint is seeking against Navient
9  Solutions?
10 A    I guess just a solution to them to stop
11 calling.
12 Q    Anything else?
13 A    Whatever the Court feels.
14 Q    Do you have any understanding of what
15 the claims are in the amended complaint?
16 A    About them calling people without their
17 permission that have nothing to do with the
18 loan.
19 Q    Have you ever heard of the Telephone
20 Consumer Protection Act?
21 A    Yes.  I have.
22 Q    Aside from anything your lawyer has told
23 you about that, and we can call it TCPA, what
24 is your understanding of what it provides?
25 A    That collectors are not allowed to call
Page 51

1  your cell phone and keep harassing you.
2  That's about it.
3  Q    Have you ever heard of the Fair Debt
4  Collection Practices Act?
5  A    Yes.
6  Q    Again, aside from anything Mr. Cocco has
7  told you, what is your understanding of what
8  that provides?
9  A    Just what Mr. Cocco told me.
10 Q    So, you haven't done any research into
11 the Fair Debt Collection Practices Act?
12 A    No.
13 Q    And not the TCPA either?
14 A    No.  I can't say I'm really -- aside
15 from playing my games --
16 Q    You're not a researcher?
17 A    No.  I'm too busy with my
18 grandchildren.
19 Q    So, can you explain to me why you
20 believe you're a suitable class representative
21 in the case?
22 A    Well, I like the law -- I mean, like I
23 said, I would like it to stop, harassing
24 people that don't really have anything to do
25 with the loan or debt that they're trying to
Page 52

1  collect.  I just would like it to stop.
2  Q    Have you spoken with any other person
3  who is receiving calls from --
4  A    No.  I haven't.
5          MR. COCCO:  You have to let her
6  finish.
7          THE WITNESS:  I'm sorry.
8          MR. COCCO:  That's all right.
9  BY MS. SIMONETTI:
10 Q    Have you spoken with anyone else who has
11 received calls from Navient, aside from the
12 family members that you have identified?
13 A    No.  I haven't.
14 Q    So, as you sit here today, do you know
15 whether any other person is annoyed by
16 receiving these types of telephone calls?
17 A    No.  I don't.
18 Q    Is there any reason that your other
19 family members have not joined you and your
20 son as plaintiffs in this case?
21 A    I didn't ask them.
22 Q    Were they annoyed by the telephone
23 calls?
24 A    Yes.  They were.
25 Q    But you did not ask them to join in the
Page 53

14 (Pages 50 - 53)

```
 1            C E R T I F I C A T E
 2                    - - -
 3        I, Janice L. Welsh, a Notary
 4  Public, do hereby certify that the foregoing
 5  deposition of Elizabeth Panzarella, was taken
 6  before me, pursuant to notice, at the time and
 7  place indicated; that said deponent was by me
 8  duly sworn to tell the truth, the whole truth,
 9  and nothing but the truth; that the testimony
10  of said deponent was correctly recorded in
11  machine shorthand by me and thereafter
12  transcribed under my supervision and
13  computer-aided transcription; that the
14  deposition is true and that I am neither of
15  counsel nor kin to any party in said action,
16  nor interested in the outcome thereof.
17        Witness my hand and official
18  seal this 15th day of October, 2019.
19
20
21
22
23     JANICE L. WELSH
24     Notary Public
25
```

Page 58

```
 1      ACKNOWLEDGMENT OF DEPONENT
 2    I, _ _ _ _ _ _ _ _ _ _ _ _ _, do hereby
 3  certify that I have read the foregoing pages
 4  ___ to ___ and that the same is a correct
 5  transcription of the answers given by me to
 6  the questions herein propounded, except for
 7  the corrections or changes in form or
 8  substance, if any, noted in the attached
 9  Errata Sheet.
10
11  _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _
12  DATE          SIGNATURE
13
14
15  Subscribed and sworn to before me this _____
16  day of _____, 2019.
17
18  My commission expires: ---------------------
19
20
21  _ _ _ _ _ _ _ _ _ _ _ _ _ _
22  Notary Public
23
24
25
```

Page 59

16 (Pages 58 - 59)

VERITEXT LEGAL SOLUTIONS
COMPANY CERTIFICATE AND DISCLOSURE STATEMENT

Veritext Legal Solutions represents that the
foregoing transcript is a true, correct and complete
transcript of the colloquies, questions and answers
as submitted by the court reporter. Veritext Legal
Solutions further represents that the attached
exhibits, if any, are true, correct and complete
documents as submitted by the court reporter and/or
attorneys in relation to this deposition and that
the documents were processed in accordance with
our litigation support and production standards.

Veritext Legal Solutions is committed to maintaining
the confidentiality of client and witness information,
in accordance with the regulations promulgated under
the Health Insurance Portability and Accountability
Act (HIPAA), as amended with respect to protected
health information and the Gramm-Leach-Bliley Act, as
amended, with respect to Personally Identifiable
Information (PII). Physical transcripts and exhibits
are managed under strict facility and personnel access
controls. Electronic files of documents are stored
in encrypted form and are transmitted in an encrypted
fashion to authenticated parties who are permitted to
access the material. Our data is hosted in a Tier 4
SSAE 16 certified facility.

Veritext Legal Solutions complies with all federal and
State regulations with respect to the provision of
court reporting services, and maintains its neutrality
and independence regardless of relationship or the
financial outcome of any litigation. Veritext requires
adherence to the foregoing professional and ethical
standards from all of its subcontractors in their
independent contractor agreements.

Inquiries about Veritext Legal Solutions'
confidentiality and security policies and practices
should be directed to Veritext's Client Services
Associates indicated on the cover of this document or
at www.veritext.com.