IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ELIZABETH PANZARELLA, et al., | : | |
| | : | |
| Plaintiffs, | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 18-3735 |
| NAVIENT SOLUTIONS, LLC, | : | |
| | : | |
| Defendant. | : | |

<u>MEMORANDUM</u>

**Tucker, J.**                                                                                              **June 15, 2020**

This case arises from telephone calls made by Defendant, Navient Solutions, LLC, to Elizabeth and Joshua Panzarella (collectively, "Plaintiffs"). Plaintiffs claim that Defendant violated the Telephone Consumer Protection Act ("TCPA") and the Fair Debt Collection Practices Act ("FDCPA"). Before the Court is Defendant's Motion for Summary Judgment (ECF No. 54). In addition to Defendant's Motion for Summary Judgment, the Court also reviewed Plaintiffs' Amended Response in Opposition to the Motion for Summary Judgment (ECF No. 63), Defendant's Reply (ECF No. 64), Plaintiffs' Sur-reply (ECF No. 65), and the arguments made by the Parties during oral argument before the Court on May 11, 2020.

Upon consideration of the Parties' arguments and for the reasons set forth below, Defendant's Motion for Summary Judgment is **GRANTED**.

  I.   **FACTUAL BACKGROUND**

Matthew Panzarella—the son of Plaintiff Elizabeth Panzarella, and brother of Plaintiff Joshua Panzarella—borrowed two private student loans that are serviced by Navient Solutions. Stmt. Material Facts ¶ 1, ECF No. 54-1. Plaintiffs are listed as credit references on borrower,

1

Matthew Panzarella's, Promissory Notes which were executed in 2006 and 2007.  Stmt. Material Facts ¶¶ 2–3.

Defendant attempted to contact borrower Matthew Panzarella when his loans became delinquent.  Stmt. Material Facts ¶ 6.  Defendant claims that it was unable to reach Matthew, and therefore attempted to contact his credit references—Plaintiffs—to get up-to-date contact information for Matthew.  Stmt. Material ¶ 6.  Plaintiffs, on the other hand, contend that Defendant contacted Plaintiff, Joshua Panzarella, because it had mistakenly recorded Joshua's telephone number as Matthew's.  Pl. Resp. to Stmt. Material Facts ¶¶ 6, 12, ECF No. 63-6.

Defendant called Plaintiffs using a software system developed by Interactive Intelligence, Inc. ("ININ").[1]  Stmt. Material Facts ¶ 13.  Defendant customized the ININ dialing system specifically for its use.  Stmt. Material Facts ¶ 13.  The ININ dialing system allows users to efficiently place outbound calls.  Pl. Mem. Opp'n Summ. J. 7, ECF No. 63.  Defendant asserts that the ININ system, "is incapable of storing or producing telephone numbers to be called using a random or sequential number generator and then dialing those numbers."  Stmt. Material Facts ¶ 23.  Defendant contends that the numbers it called are stored in SQL servers and then uploaded to the ININ system for specific calling campaigns.  Stmt. Material Facts ¶ 23.  Plaintiffs do not contest that the phone numbers called by Defendant are stored on SQL servers, but disagree with Defendant's characterization that the SQL server is a separate system from the ININ dialing technology.  Pl. Resp. to Stmt. Material Facts ¶ 23.  Instead, Plaintiffs contend that the SQL server is a necessary "component of the ININ dialing system."  Pl. Resp. to Stmt. Material Facts ¶ 22.

---

[1] ININ is now known as Genesys Telecommunications Laboratories, Inc., but is consistently referred to as ININ in briefing supplied by the Parties.

## II. PROCEDURAL HISTORY

On October 31, 2018, Elizabeth and Joshua Panzarella, filed suit individually and on behalf of similarly situated persons, against Navient Solutions, LLC. *See* Compl., ECF No. 1. In that Complaint, Plaintiffs alleged that Defendant called the named Plaintiffs in violation of the TCPA. Compl. ¶¶ 43–53. Plaintiffs filed an Amended Complaint on December 27, 2018. *See* Am. Compl. ¶¶ 45–55, ECF No. 16. The Amended Complaint alleged that Defendant violated the TCPA and the FDCPA. Am. Compl. ¶¶ 45–55.

Plaintiffs allege that Defendant violated the TCPA which prohibits using an "automatic telephone dialing system" or an artificial or pre-recorded voice to call a cell phone without prior express consent of the called party. Am. Compl. ¶¶ 45–51. Plaintiffs allege that the Defendant violated the FDCPA by engaging in conduct, which had the natural consequence of harassing, oppressing, or abusing Plaintiffs who were not connected to the alleged debt. Am. Compl. ¶¶ 52–55. Plaintiffs also claim that Defendant made false representations of the character, amount, or legal status of the debt, and unfairly and unconscionably attempted to collect the debt. Am. Compl. ¶¶ 52–55. Defendant answered the Amended Complaint on January 24, 2019. Answer, ECF No. 19.

Defendant then filed a Motion for Summary Judgment on December 11, 2019. *See* Mot. Summ. J., ECF No. 54. Plaintiffs responded to Defendant's Motion for Summary Judgment on February 3, 2020, and then filed an Amended Response on February 4, 2020. Pls.' Resp. Opp'n Mot. Summ. J., ECF No. 62; Am. Resp. Opp'n Summ. J., ECF No. 63. Defendant filed a Reply to Plaintiffs' arguments on February 14, 2020. Def. Reply, ECF No. 64. Plaintiffs then moved to file a sur-reply on March 9, 2020. Pls.' Sur-Reply, ECF No. 65. The Court held an oral argument on the Motion for Summary Judgment on May 11, 2020. Upon consideration of the

briefing supplied by the Parties and the positions asserted at oral argument, the Court **GRANTS** Defendant's Motion for Summary Judgment.

### III. STANDARD OF REVIEW

A court should grant summary judgment only if the movant can show that there is not a genuine issue of material fact and it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). To defeat summary judgment, factual disputes must be both material and genuine. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The applicable substantive law dictates materiality; a fact is material if it may affect the outcome of the suit under the governing law. *Id*. at 247–48. A dispute is genuine if the record established would allow a reasonable jury to return a verdict for the nonmoving party. *Id*. at 248.

At the summary judgment stage, courts must construe all evidence in the light most favorable to the nonmoving party. *Santini v. Fuentes*, 795 F.3d. 410, 416 (3d Cir. 2015). However, once a moving party has proven that there is no genuine issue of material fact, "[t]he mere existence of a scintilla of evidence in support of the [nonmoving] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson*, 477 U.S. at 252; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Defendant has proven that there is no genuine issue of material fact and it is entitled to judgment as a matter of law. As a result, the Court **GRANTS** Defendant's Motion for Summary Judgment.

### IV. DISCUSSION

The Court will analyze Plaintiffs' TCPA claims before discussing Plaintiffs FDCPA claims.

**A. Defendant is Entitled to Judgment as a Matter of Law because Plaintiffs Failed to Establish that Defendant's ININ Dialing System is an Automatic Telephone Dialing System.**

Plaintiffs allege that Defendant violated the TCPA by using an automatic telephone dialing system ("ATDS") to call Plaintiffs' cellphones. Pl. Resp. Opp'n Summ. J. 3, ECF No. 63. In relevant part, the TCPA prohibits the use of an ATDS to call any cellular telephone number.[2] 27 U.S.C. § 227(b)(1)(A)(iii). The Parties do not dispute that Defendant called Plaintiffs' cell phones. However, the Parties disagree on whether the dialing system used by Defendant is an ATDS, as defined by the TCPA. Mem. Supp. Summ. J. 1, ECF No. 54.

The TCPA defines an automatic telephone dialing system as, "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). Although Federal Communication Commission ("FCC") guidance has evolved over time, recent decisions by the D.C. Circuit and the Third Circuit clarify that the Court should only consider the *present* capacity in deciding whether Defendant's ININ dialing system is an ATDS as defined by the TCPA. *See ACA Int'l v. FCC*, 885 F.3d 687 (D.C. Cir. 2018); *Dominguez v. Yahoo, Inc.*, 894 F.3d 116 (3d. Cir. 2018). Based on the facts before the Court, the Court finds that the ININ dialing system used by Defendant did not have the present capacity to store or produce telephone numbers to be called using a random or sequential number generator, and is therefore, not an ATDS.

---

[2] The statute makes an exception for calls that are made for emergency purpose or with the prior express consent of the called party. 27 U.S.C. § 227(b)(1).

Plaintiffs, in arguing that the ININ system is an ATDS, point to the ININ user manual and a declaration from an expert, Randall Snyder. *See* Pls.' Resp. Opp'n Summ. J. 10; Pls.' Surreply 4, ECF No. 65-2.

The Interaction Dialer Manager Help manual explains that the ININ dialing system architecture relies on additional components, including a database management system like Microsoft SQL or Oracle DBMS to store and organize client lists. Pls.' Resp. Opp'n Summ. J., Ex. A, NSL_EP_0000047, ECF No. 63-1. Defendant uses Microsoft SQL servers to "sort and store telephone numbers associated with consumer accounts." Mem. Supp. Summ. J. 10. Plaintiffs argue that Microsoft SQL can generate random or sequential number tables. Pls.' Sur-reply 3. Plaintiffs posit that because the "SQL Server is configured by [Defendant] to be a necessary component of the ININ dialing system architecture," and SQL can generate random or sequential numbers, the ININ dialing system therefore has the present capacity to dial numbers generated randomly or sequentially and is therefore an ATDS.

Defendant, on the other hand, argues that the SQL servers are a separate database from the ININ dialing system. Mem. Supp. Summ. J. 10. Defendant relies on a declaration from Joshua Dries, the Senior Director of Dialer Operations for Defendant. Mem. Supp. Summ. J. 10. In that declaration, Dries states that, "SQL servers are separate systems for storing database or file-based data . . . This data is accessed by NSL's different dialing platforms, including the ININ system." Dries Decl. ¶ 28, ECF No. 54-3. Dries also states that, "tables of numbers that are stored on the SQL servers are uploaded into [Defendant's] ININ system to begin the dialing campaign." Dries Decl. ¶ 29.

Based on the record presented, the Court finds that the SQL server is distinct from the ININ dialing system. As a preliminary matter, the D.C. Circuit's reason for striking down the

FCC's broad construction of which technologies constitute an ATDS in *ACA Int'l v. FCC* weighs heavily on the Court's analysis here. *See* 885 F.3d 687 (D.C. Cir. 2018). One of the chief concerns of the D.C. Circuit was the "eye-popping sweep" of the FCC's interpretation if every smartphone qualified as an ATDS because of its ability to download an application with the requisite features. *Id.* at 697. Plaintiffs' expert, Randall Snyder, declares that, "Oracle and SQL Server are among the two most popular enterprise database technology systems in use." Decl. Randall Snyder ¶ 48, ECF No. 65-3. The widespread use of the Microsoft SQL servers, acknowledged even by Plaintiffs, motivates the Court to carefully consider whether it should be regarded as part of the same system. Holding that SQL is part of the ININ dialing system risks a far-reaching and overly-broad interpretation of systems that may be considered ATDSs.

In addition, the manual to which Plaintiffs direct the Court's attention leads the Court to conclude that the SQL servers are separate from the ININ dialing system. The manual states that "the database server often runs on dedicated hardware." Pls.' Resp. Opp'n Summ. J., Ex. A, NSL_EP_0000047, ECF No. 63-1. The Parties agree that Defendant's configured their system with the SQL server on separate, dedicated hardware. Joshua Dries Depo. 97:24–98:2, ECF No. 63-4. The database server being housed in separate hardware suggests that it should be considered a distinct system. In addition, the manual states that "[n]o databases are included with the dialer," and that "a third-party database management system is required." Pls.' Resp. Opp'n Summ. J., Ex. A, NSL_EP_0000062. The manual considering the database management system to not be "included" and a "third party system" weighs in favor of finding the SQL database to be a system distinct from the ININ dialing system.

Further, the manual repeatedly refers to the Dialer's ability to import information from the SQL database server. *See, e.g.*, Pls.' Resp. Opp'n Summ. J., Ex. A, NSL_SP_0000062, 68,

7

314–16. For example, when explaining the ININ system's ability to create dialing campaigns, the manual reads: "[i]f you already have data stored in a separate database. . . you can import that data into your Dialer database using Dialer's Contact Import Wizard." Pls.' Resp. Opp'n Summ. J., Ex. A, NSL_EP_0000068. The allusion to information from SQL being *imported* suggests that information is being transferred from one system to another. Black's Law Dictionary, though it does not contemplate the electronic importing of information, defines import as "a product brought into a country from a foreign country where it originated." *Import*, Black's Law Dictionary (11th ed. 2019). Similar to the dictionary's reference to products being brought from one country to another, the Court finds that the manual's repeated reference to contact lists being *imported* to imply that the information is being transferred from one distinct system to another.

In short, the conclusion that Microsoft SQL is a part of the ININ dialing system does not follow from the ININ dialing system supporting and being compatible for easy use with Microsoft SQL. Plaintiffs have introduced no evidence to suggest that the ININ dialing system on its own is an ATDS. Instead, they agree that the Defendant used the SQL system to store and organize contact lists and then imported those lists into the ININ dialing system to initiate dialing campaigns. Therefore, the Court **GRANTS** Defendant's Motion for Summary Judgment on Plaintiffs' TCPA claim because there is not a genuine issue of material fact regarding the ability of the ININ dialing system, on its own, as configured by Defendant, to generate random or sequential telephone numbers to be dialed. The Court therefore finds, based on the record presented to it, that the ININ system, as used by Defendant, is not an ATDS.

    B.  **Plaintiffs have Abandoned their FDCPA Claims.**

The Court also **GRANTS** Defendant's Motion for Summary Judgment on Plaintiffs' FDCPA claims since Plaintiff failed to reply to Defendant's arguments throughout briefing and

during oral argument.  The FDCPA limits the activities that "debt collectors" may undertake in their attempt to collect debts on behalf of another person or entity.  Defendant argues that it is expressly exempted from the statutory definition of debt collector because the statute excludes, "any person collecting or attempting to collect any debt . . . to the extent such activity . . . concerns a debt which was not in default at the time it was obtained by such person."  15 U.S.C. § 1692a(6)(F)(iii); Mem. Supp. Summ J. 15.  Defendant argues that because NSL serviced the loans which were the basis of this action since their origination, when they were not in default, this statutory exclusion applies to it.  Mem. Supp. Summ. J. 15.  Plaintiffs did not respond to Defendant's argument either through briefing or during oral argument.  Therefore, the Court **GRANTS** Defendant's Motion for Summary Judgment on Plaintiffs' FDCPA claims as well.

## V.   CONCLUSION

For the foregoing, Defendant's Motion for Summary Judgment is **GRANTED** for both Plaintiffs' TCPA and FDCPA claims.  An Order reflecting the Court's conclusions follows.